## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KAREN HOOSIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 11 C 3816** |
| v. | ) | |
| | ) | **Magistrate Judge Jeffrey T. Gilbert** |
| GREENWOOD HOSPITALITY | ) | |
| MANAGEMENT LLC d/b/a | ) | |
| HILTON OAK LAWN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karen Hoosier ("Hoosier") filed this lawsuit against her employer defendant Greenwood Hospitality Management LLC ("Greenwood") alleging that her supervisor discriminated against her based on her race and her age, subjected her to a hostile work environment and retaliated against her for complaining about the harassment. Hoosier alleges race discrimination, harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 ("Section 1981") and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/101 *et seq.*, and age discrimination, harassment and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Greenwood filed a motion for summary judgment at the conclusion of discovery seeking judgment as a matter of law on all claims in Hoosier's amended complaint. Greenwood also filed a motion to strike the declarations Hoosier submitted in support of her opposition to the motion for summary judgment.

For the reasons discussed below, the Court grants defendant Greenwood Hospitality Management LLC's Motion for Summary Judgment [55] and its Motion to Strike Each of Plaintiff's Declarations in Opposition to Defendant's Motion for Summary Judgment [76].

## I. LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). A court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255  (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page,* 715 F.2d 1238, 1243 (7th Cir. 1983). Conclusory allegations will not defeat a motion for summary judgment.  *Thomas v. Christ Hosp. and Medical Center,* 328 F.3d 890, 893-94 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 888-89 (1990)). Unsupported speculation also will not defeat a summary judgment motion; and an affidavit that includes general opinions and beliefs does not

create a genuine issue of material fact sufficient to defeat summary judgment. *Cleveland v. Porco Co.*, 38 F.3d 289, 295 (7th Cir. 1994).

In considering whether summary judgment is appropriate, the Court relies on the statements of facts submitted by the parties. To that end, the parties must comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of the District Court of the Northern District of Illinois.

### A. Hoosier's Failure to Comply with Local Rule 56.1(b)(3)(C)

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts with "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts . . . ." LR 56.1(a). The nonmoving party opposing the motion for summary judgment then must file a response to this statement, as well as its own statement of additional facts. *See* LR 56.1(b)(3). The moving party then has an opportunity to admit, or deny the non-moving party's statement of additional facts. *See* Local Rule 56.1(a) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party."). A party's obligation to support its facts with evidence is mandatory, and the Seventh Circuit repeatedly has held that a district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1. *See Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000).

Hoosier has complied only partially with Local Rule 56.1. She filed a memorandum of law in opposition to Greenwood's motion for summary judgment as required by Local Rule 56.1(b)(2) and responded to Greenwood's Local Rule 56.1 statement of facts as required by Local Rule 56.1(b)(3)(B). Hoosier, however, did not file a separate statement of additional facts as required by Local Rule 56.1(b)(3)(C). Although her memorandum of law in opposition to Greenwood's motion for summary judgment as well as her responses to Greenwood's Local Rule 56.1 statement of facts are replete with discussion of and citations and references to additional evidence, including her own declaration and five declarations from other witnesses, those additional facts and declarations are not properly before this Court because Hoosier failed to comply with Local Rule 56.1(b)(3)(C).

The discussion of facts in a responsive memorandum is insufficient to put the issue before the court. *See Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995); *Malec v. Sanford*, 191 F.R.D. 581, 594 (N.D.Ill. 2000). Facts are to be set forth in properly submitted Rule 56.1 statements, and it is not the role of the court to parse the parties' exhibits to construct the facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 754 F. Supp. 2d 984, 985 (N.D.Ill. 2010) (citing *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)). It simply is not the court's job to sift through the record to determine whether there is sufficient evidence to support a party's claim. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job . . . to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d

609, 613 (7th Cir. 2006); *see also Hamm v. Nestle USA, Inc.*, 2013 WL 4401328, at * 2 (N.D.Ill. Aug. 15, 2013).

In Hoosier's response to Greenwood's statement of facts, she admitted some of Greenwood's facts and denied others with citation in some instances to a declaration that she submitted in conjunction with her memorandum of law in opposition to Greenwood's motion for summary judgment. The alleged facts set forth in Hoosier's declaration and the declarations of other witnesses that Hoosier cites in her memorandum of law, however, were not included in any statement of additional facts as required by Local Rule 56.1(b)(3)(C). Instead, Hoosier simply discusses, references and cites the facts set forth in those declarations in her memorandum of law in opposition to Greenwood's motion for summary judgment. Those facts, however, without submission of and proper citation to a Local Rule 56.1(b)(C)(3) statement cannot be considered by this Court. It is impossible for the Court to determine whether and, if so, to what extent those facts are disputed by Greenwood and what evidence Greenwood would cite in responding to the additional facts relied upon by Hoosier in those declarations. Local Rule 56.1 exists for a reason. Had Hoosier submitted a Local Rule 56.1(b)(C)(3) statement, Greenwood would have been able to reply to it, and the matters Hoosier wants the Court to consider would be presented in a way that the Court could do so in an organized, efficient manner.

The Court's Local Rules are clear and unequivocal. For whatever reason, Hoosier chose not to follow them. By not complying with Local Rule 56.1, Hoosier has injected into the case declarations that purport to contain facts and other statements that have not been subject to scrutiny by Greenwood, nor properly presented to this Court for its review and, therefore, will not be considered by the Court.

**B.    Greenwood's Motion to Strike**

Greenwood filed a motion to strike each of the declarations Hoosier filed in support of her opposition to its motion for summary judgment. For the reasons discussed above, those declarations are not properly before the Court and will not be considered because Hoosier did not comply with Local Rule 56.1(b)(3)(C).  Therefore, the motion to strike is granted.  To the extent that Hoosier properly complied with the Federal Rules of Civil Procedure in responding to Greenwood's statement of facts, the Court will consider Hoosier's evidence in the light most favorable to her as required by Rule 56 of the Federal Rules of Civil Procedure.

## II.  STATEMENT OF FACTS

Hoosier is a 48 year old African American female.  *See* Plaintiff's Resp. to Defendant's Statement of Facts [65], at ¶1.  She currently is employed by Greenwood and works at the Hilton Oak Lawn in Oak Lawn, Illinois.  *Id.*  Hoosier was hired in 1994 as a Front Office Agent, and she currently supervises the Front Office and is the highest paid employee in her department.  *Id.* at ¶¶1, 4.  Greenwood began managing the Hilton Oak Lawn in December 2009, but does not own the hotel.  *Id.* at ¶28.

Rick Harmon is a 62 year old Caucasian male who was hired in 2008 by a previous manager of the Hilton Oak Lawn.  *See* Plaintiff's Resp. to Defendant's Statement of Facts [65], at ¶9.  Harmon is the General Manager of the Hilton Oak Lawn, and he is Hoosier's supervisor. *Id.* at ¶8.  Hoosier never has been subjected to any discipline under Harmon nor has Harmon written-up Hoosier for any performance issues or reduced her rate of pay.  *Id.* at ¶¶10, 11.

At all times during Hoosier's employment with Greenwood, Greenwood has maintained policies prohibiting race and age discrimination and retaliation. *See* Plaintiff's Resp. to

Defendant's Statement of Facts [65], at ¶31. Hoosier received a copy of Greenwood's Employee Handbook and acknowledged that she received a copy of Greenwood's non-harassment policy. *Id.* at ¶¶32, 34.

Hoosier identifies only Harmon as her alleged harasser and discriminator in this lawsuit. *See* Plaintiff's Resp. to Defendant's Statement of Facts [65], at ¶39. Hoosier does not identify any instance in which any Greenwood employee, including Harmon, has referred to Hoosier or made any comments about her on the basis of her race or her age. *Id.* at ¶40. Hoosier also is not aware of any instance in which an employee of the Hilton Oak Lawn stated that any decisions affecting her employment were being made on the basis of her race or age. *Id.* at ¶41.

Hoosier testified under oath that she could not identify specifically a single instance of conduct by Harmon in which he used racist or ageist language nor could she point to specific instance in which it could be inferred that he discriminated against Hoosier or anyone else on the basis of race or age. *See* Plaintiff's Resp. to Defendant's Statement of Facts [65], at ¶42. Hoosier, however, states that Harmon discriminated against her based on her race and her age during a January 21, 2010 staff meeting because Harmon singled her out and treated her disparately and more harshly than other Caucasian employees who are younger than she. *Id.* at ¶46. Specifically, Hoosier complains that, on January 21, 2010 during a weekly staff meeting with other employees present, Harmon singled her out by asking her harsh and difficult questions regarding a weekly budget report, inquiring about her plans for an upcoming week-long conference in Texas, and asking her abrupt questions to which she did not know the answer. *Id.* at ¶¶46, 60, 61.

At the conclusion of the staff meeting, Hoosier complained to the hotel's Director of Human Resources Maria Swafford that she believed that Harmon had mistreated her during the meeting. *See* Plaintiff's Resp. to Defendant's Statement of Facts [65], at ¶48. Hoosier, however, did not report any allegations of discrimination or harassment based on her race or her age. *Id.* Thereafter, Greenwood initiated an investigation and ultimately concluded that nothing improper had occurred during the January 21, 2010 staff meeting. *Id.* at ¶49.

Hoosier also testified that Harmon discriminated against her because, in the presence of her subordinates, he confronted her at her desk in a demeaning manner and talked down to her like she was uneducated. *See* Plaintiff's Resp. to Defendant's Statement of Facts [65], at ¶61. Hoosier, however, admitted that Harmon did not make reference to her race or age. *Id.* at ¶62. Hoosier also testified that there was nothing else specific that formed the basis for her discrimination and retaliation claims against Greenwood. *Id.* at ¶66.

Deena Hayes is a 31 year old Caucasian female. *See* Plaintiff's Resp. to Defendant's Statement of Facts [65], at ¶13. In the spring of 2009, Hayes was hired as the Revenue Manager at the Hilton Oak Lawn. *Id.* at ¶14. Prior to being hired at the Hilton Oak Lawn, Hayes worked as a Revenue Manager at another Hilton property. *Id.* at ¶15. Hayes' salary is approximately three or four thousand dollars more than Hoosier's salary. *Id.* at ¶19. Hoosier claims that she is paid less money than Hayes because of Hoosier's race and age. *Id.* at ¶20. Hoosier and Hayes do not have the same position. *Id.* at ¶22. Harmon has disciplined Hayes for attendance violations and forecasting errors. *Id.* at ¶24.

# III. DISCUSSION

In her amended complaint, Hoosier alleges discrimination, harassment, hostile work environment and retaliation on the basis of her race and her age. Hoosier argues that Greenwood's motion for summary judgment should be denied because: (1) she has stated *prima facie* claims for race and age discrimination, harassment and hostile work environment, and retaliation; (2) Greenwood has failed to articulate any legitimate nondiscriminatory reason for why Harmon singled Hoosier out; (3) there is a legitimate basis to hold Greenwood liable for Harmon's unlawful conduct; and (4) there are disputed issues of fact. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [64], at 3.

## A. Hoosier's Claims For Race And Age Discrimination Fail As A Matter Of Law

Hoosier asserts claims of race discrimination under Title VII, Section 1981 and the IHRA and a claim of age discrimination under the ADEA. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee in the terms, conditions or privileges of employment on the basis of an employee's gender, race, religion or national origin. *See* 42 U.S.C. § 2000e-2(a). Under Section 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The phrase "make and enforce contracts" prohibits racial discrimination in the employment context, including harassment, discharge, promotion, transfer, retaliation and hiring. *See Jones* v. *R.R. Donnelly & Sons Co.*, 541 U.S. 369, 383 (2004). Under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's . . . age." 29 U.S.C. § 623.

At the summary judgment stage, courts generally apply the same analysis to discrimination claims brought under Section 1981 or the IHRA as they apply to Title VII claims. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) (stating that courts "generally have applied the same *prima facie* requirements to discrimination claims brought under Title VII and section 1981"); *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 641 n. 5 (7th Cir. 2006) (stating that "both Title VII and § 1981 employ the same analysis"); *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill.2d 172, 545 N.E.2d 684, 687 (Ill. 1989) (adopting "the analytical framework . . . addressing claims brought under Title VII" to an employment discrimination claim brought pursuant to the IDHA); *see also Tompkins v. Bank of America Corp.*, 2011 WL 1303953, at *2 (N.D.Ill. April 5, 2011). Similarly, in determining what constitutes harassment and a hostile work environment under the IHRA, Illinois courts and the Illinois Department of Human Rights have examined federal decisions under Title VII as the "prohibition of harassment in the Act closely parallels that found in Title VII." *Trayling v. Bd. of Fire & Police*, 273 Ill. App.3d 1, 10, 652 N.E.2d 386, 393 (2d Dist. 1995); *Bd. of Trustees v. Knight*, 163 Ill. App. 3d 289, 294, 516 N.E.2d 991 (5th Dist. 1987) (recognizing that claims arising under the IHRA are analyzed under the same standards as Title VII claims). Because Title VII , Section 1981 and IHRA claims use the same standards, a plaintiff's failure to establish a *prima facie* case of discrimination under Title VII for a given employment action necessarily forecloses Section 1981 and IHRA claims arising from the same conduct. *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996).

A plaintiff may establish unlawful discrimination under the direct method of proof by presenting direct or circumstantial evidence that creates a "convincing mosaic of discrimination." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). Direct evidence of discrimination essentially consists of an admission that the employer took an adverse employment action against an employee based upon prohibited animus. *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Circumstantial evidence of intentional discrimination can consist of suspicious timing, ambiguous statements, differing treatment of similarly situated employees, personal animus, pretext and other evidence which allows the jury to reasonably infer retaliation. *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (citing *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir.2007)). To survive summary judgment, a plaintiff must present evidence of a link between her protected status and the adverse employment action. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir.2003) ("Bigotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action.").

Here, Hoosier concedes that there is no direct evidence of intentional discrimination based on her race or age and that neither Harmon, nor anyone at Greenwood, ever made any comments about her race or her age. Nevertheless, she argues that a jury could infer discriminatory animus circumstantially from Harmon's conduct. In support of this argument, Hoosier relies heavily on her own declaration and the third party witness declarations she submitted with her memorandum of law in opposition to Greenwood's motion for summary judgment *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgement [64], at 8-12. As discussed above, however, none of the alleged facts taken from

those declarations are properly before this Court and will not be considered as evidence in support of her argument that Harmon's conduct toward her was motivated by some improper discriminatory animus.

Even if the Court were to consider Hoosier's improperly submitted declarations, however, it would not change the Court's conclusion. The ostensible bullying, rude or belittling comments made by Harmon to Hoosier, sometimes in the presence of others, that Hoosier concludes were directed at her because of her race or age are not sufficient to establish a convincing mosaic of discrimination in violation of the civil rights laws. Although Hoosier may sincerely believe that Harmon's comments and conduct constitute unlawful discrimination against her because of her race or age, a plaintiff's bare or conclusory assertion that an employer mistreated her because of her protected status is not sufficient to establish a link between the an employee's protected status and the treatment she received. *See Winsley*, 563 F.3d at 605.

In many instances, many of the statements or observations included in Hoosier's declaration as well as the third party witness declarations are inadmissible either because they are conclusory or speculative, lack foundation or because they are irrelevant or otherwise inadmissible. *See, e.g.,* A. Cook Decl. [64-3], at ¶4 ("I personally felt offended just by listening to how he [Harmon] disrespected her. No one should have to put up with that kind of demeaning treatment."); D. Martinez Decl. [64-4], at ¶13("Karen said that she complained to Mr. Harmon about how Deanna [Hayes] ignores her responsibilities, which causes extra work and

responsibility for Karen, but that it fell on deaf ears because he [Harmon] was never going to make Deanna do her job.")[1]

Even when the declarations are based on personal knowledge, they fall short of linking Harmon's allegedly rude, disrespectful or belittling comments to impermissible racial or ageist discrimination.   In other words, the inference that Hoosier would like the Court to draw from these declarations — that Harmon bullied, disrespected, belittled and generally was mean to Hoosier because of her race or age — is not supported by the evidence.  Most of the witnesses that submitted the declarations themselves do not make that link.  Moreover, stray statements or incidents recounted by the declarants that do not involve Hoosier and Harmon also do not tip the scale in Hoosier's favor on summary judgment.  *See e.g.*, J. Ramirez Decl. [64-5], at ¶¶8-9 (Harmon did not take seriously an African American guest's complaint that she was treated poorly by Hayes); L. Senior Decl. [64-6], at ¶¶13-15 (Harmon asked "why are black guys in the bar" but did not "express such concerns when there are a white patrons [sic] in the bar;" and "[r]acist comments were directed at me by the Catering Manager" but not by Harmon).

In addition, the Court notes that some of the statements or incidents described in the declarations, stripped of  conclusory characterization, are included in Greenwood's Local Rule

---

[1] Federal Rule of Civil Procedure 56 requires that affidavits or declarations "used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated" therein. FED. R. CIV. P. 56(c)(4).  Speculation and conjecture contained in a declaration cannot create a material issue of fact. *See Visser v. Packer Engineering Assoc.*, Inc., 924 F.2d 655, 659-60 (7th Cir. 1991) ("[I]nferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.").  Nor can hearsay be introduced as means of opposing summary judgment.  *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (an affidavit based on hearsay is "inadmissible in summary judgment  proceedings to the same extent that it is inadmissible in a trial").

56.1 statement of facts and Hoosier's response thereto, and so the Court has considered them. To the extent Hoosier argues that isolated incidents of Harmon allegedly mistreating her or making a comment about either Hoosier or Hayes that are not included in the responsive Local Rule 56.1 statements are material facts that preclude summary judgment, these isolated incidents are not sufficient to create an actionable claim of race or age discrimination as a matter of law. *See e.g.* J. Ramirez Decl. [64-5], at ¶6 (During a meeting in mid-2010, Harmon said Hoosier "[was] resentful of Deanna Hayes because Deanna [was] white, young and attractive."). The Seventh Circuit repeatedly has held that isolated comments by a supervisor that may be inappropriate and offensive do not rise to a level that is sufficient to support a claim of discrimination or harassment. Without more, Hoosier fails to establish a claim for either race or age discrimination based on direct evidence of discriminatory animus.[2]

---

[2] *See e.g.*, *Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012) (holding that vague and conclusory allegations of being harassed and intimidated by a supervisor are not sufficient to defeat summary judgment and sporadic inappropriate and rude comments by a supervisor "do not rise to the level of conduct that alters the terms and condition of employment"); *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 604-05 (7th Cir. 2012) (holding that an isolated comment is not direct evidence of discrimination even if a plaintiff interpreted it as motivated by a discriminatory animus); *Mach v. Will County Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009) ("An isolated or 'stray remark' is typically insufficient to create an inference of discrimination. . . ."); *Kirley v. Bd. of Ed. of Maine Township High School*, 2013 WL 6730885, at *8 (N.D. Ill. Dec. 13, 2013) (recognizing that the Seventh Circuit consistently has held that "isolated comments that are no more than 'stray remarks' in the work place are insufficient to establish that a particular decision was motivated by discriminatory animus"); *Hogg v. Fraser Shipyards, Inc.*, 407 F. Supp. 2d 1027, 1035 (N.D. Ill. 2006) ("[A]n isolated question about when an employee plans to retire is insufficient to give rise to an inference of age discrimination under the direct method of proof in an AEDA claim.") (citation omitted); *Beard v. Hall Drive-Ins, Inc.*, 2005 WL 1705622, at *6 (N.D. Ill. July 20, 2005) (three examples of isolated, temporally remote comments allegedly made by the defendant owner do not create a triable issue of material fact regarding age discrimination); *Williams v. Metro. Water Reclamation Dist. of Greater Chicago*, 2002 WL 484860, at *5 (N.D.Ill. Mar.28, 2002) (finding that an isolated race-based discriminatory comment – "it wasn't the Italians that I had a problem with, it was you blacks"– was not actionable because it was neither threatening nor severe and other evidence indicated that the supervisor was harsh, difficult and unfair, but did not suggest that the supervisor harbored racial animus).

If a plaintiff cannot establish discrimination with direct evidence, then a plaintiff must proceed under the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]  *See also Alexander v. Wisconsin Department of Health and Family Services,* 263 F.3d 673, 682 (7th Cir. 2001). The *McDonnell Douglas* pretext analysis places the initial burden on the plaintiff to establish a *prime facie* case of discrimination. *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 600 (7th Cir. 2001).  To state a claim for either race or age discrimination, a plaintiff initially must demonstrate: (1) she is a member of a protected class; (2) she performed her job satisfactorily and was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) other similarly-situated employees who are not members of the protected class were treated more favorably. *See Koski v. Standex Intern. Corp.,* 307 F.3d 672, 676 (7th Cir. 2002); *Wells v. Unisource Worldwide, Inc.,* 289 F.3d 1001, 1006 (7th Cir. 2002); *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 322 (7th Cir. 2001).

Only if a plaintiff successfully produces evidence of a *prima facie* case does the burden then shift to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *Pitasi v. Gartner Group,*

---

[3] In September 2013, one panel of judges in the Seventh Circuit questioned whether the *McDonnell Douglas* test should be modified.  In *Perez v. Thorntons, Inc.*, 731 F.3d 699 (7th Cir. 2013), the panel decided to "recognize and join the majority of active judges in this circuit who have opined that the time has come to jettison the 'ossified direct/indirect [*McDonnell Douglas*] paradigm' in favor of a simple analysis of whether a reasonable jury could infer prohibited discrimination."  731 F.3d at 703. Within the last month, however, the Seventh Circuit stated that while the approach in *Perez* is being considered, "the Court has continued to look at the factors embodied in the traditional tests to determine whether plaintiff has succeeded in creating a genuine issue of material fact."  *Chaib v. Indiana*, 2014 WL 685274, at *4 (7th Cir.  Feb. 24, 2014).  For the moment, the *McDonnell Douglas* test still is the controlling standard in the Seventh Circuit.

*Inc.*, 184 F.3d 709, 716 (7th Cir. 1999). If the defendant satisfies its burden, the presumption

vanishes, and the plaintiff must prove that the defendant's stated reason is mere pretext masking

discriminatory action. *Hicks*, 509 U.S. at 506. A plaintiff can establish pretext by showing that a

discriminatory reason more likely than not motivated the employer or that the employer's

proffered reason is unworthy of credence because it has no basis in fact, was not the real reason

for the adverse action, or was insufficient to justify the adverse action. *Collier v. Budd Co.*, 66

F.3d 886, 892 (7th Cir. 1995).

In this case, Hoosier has not established a *prima facie* case of either race or age

discrimination under the indirect method. While there is no dispute that Hoosier is a member of

a protected class — she is an African American women who is over the age of forty — there is

no evidence that she suffered any adverse employment action. Precedent in this Circuit has

established that "not everything that makes an employee unhappy is an actionable adverse

action." *Smart v. Ball State Univ.,* 89 F.3d 437,441 (7th Cir. 1996). Those employment actions

which are personally humiliating and may result in a "bruised ego" do not necessarily constitute

adverse employment actions under Title VII. *See Flaherty v. Gas Research Institute,* 31 F.3d 451

(7th Cir. 1994); *Spring v. Sheboygan Area School District,* 865 F.2d 883, 885-86 (7th Cir. 1989).

The undisputed facts show that Hoosier was upset about how Harmon treated her at the

January 21, 2010 weekly staff meeting and that she was embarrassed about being singled out and

spoken to harshly by her supervisor at the meeting as well as another time at her desk in front of

some co-workers. The Seventh Circuit, however, has stressed that the court is not to function as

a "super-personnel department intervening whenever an employee feels he is being treated

unjustly." *Cardoso v. Robert Bosch Corp.,* 427 F.3d 429,435 (7th Cir. 2005).

The Court accepts as true that Harmon asked Hoosier harsh and difficult questions in a demeaning manner and that Hoosier was embarrassed about being singled out and spoken to harshly in front of her co-workers. However, anti-discrimination laws are not triggered by rude behavior. *Ford v. Minteq Shapes & Servs.*, 587 F.3d 845, 848 (7th Cir. 2009). The record before this Court is devoid of any indication that Harmon's conduct was "inherently racial" or age-based and revealed "negative attitudes toward African-Americans," or that such conduct had "racial . . . overtones." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345-46 (7th Cir. 1999).

While it is true that discrimination need not be explicitly racial or ageist in order to be probative of some discrimination (*id.* at 345), it is equally true that not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a protected class. *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1308 (7th Cir. 1989). Rather, the Seventh Circuit has held that the alleged discrimination must be sufficiently connected to an employee's race or age before it may reasonably be construed as being motivated by a defendant's discriminatory animus. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004); *Shanoff v. Ill. Dep't of Human Serv.*, 258 F.3d 696, 704 (7th Cir. 2001). Hoosier's speculation that Harmon singled her out and treated her worse than other employees because of her race and age, without more, does not create a disputed issue of material fact sufficient to allow Hoosier to proceed to trial.

Because Hoosier has failed to establish a *prima facie* case of race or age discrimination, Greenwood is entitled to judgment as a matter of law with respect to Hoosier's discrimination claims.

**B.     Hoosier's Claims For Hostile Work Environment/Harassment Also Fail As A Matter Of Law**

Hoosier also claims that Harmon harassed her and subjected her to a hostile work environment based upon her race and age.  Employers violate Title VII or the ADEA if discrimination based upon race, national origin, gender or age creates a hostile or abusive work environment. *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1033 (7th Cir. 2003); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001).  To establish a hostile work environment, the plaintiff must submit evidence that: (1) she was subject to unwelcome harassment; (2) the harassment was based upon a protected characteristic; (3) the harassment was severe and pervasive so as to alter the conditions of the employee's environment and creates a hostile work environment; and (4) a basis for employer liability exists.  *See Atanus v. Perry*, 520 F.3d 662, 676 (7th Cir. 2008).

In order to maintain a claim for hostile work environment under Title VII or the ADEA, the plaintiff must offer evidence that a supervisor or coworker harassed her because of a protected characteristic, such as her race, national origin, gender or age.  *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004). Federal civil rights laws do not exist to ensure that employees enjoy workplaces that are free from profanity or incivility; to be actionable, the conduct must either have a discriminatory character or purpose. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999); *Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1010 (7th Cir.1994) ("Workers, like other people, often are foul-mouthed . . . ."); *Vore v. Ind. Bell Tel. Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994) (noting that Title VII "does not guarantee a utopian workplace, or even a pleasant one").

Here, Hoosier claims "that the extended period of constant bullying, nasty criticisms, belittling opinions, public professional humiliation, intimidation, destructive accusations, insults, undue pressure, impossible deadlines and devaluing of her efforts over several months, almost daily, has had a caustic effect on her work environment and emotional well-being, constituting an adverse employment action."  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [64], at 13.  However, Hoosier identifies specifically only two or three instances during which Harmon treated her harshly and in a demeaning manner — once during the January 21, 2010 staff meeting, a second time at the hotel front desk in front of some co-workers, and a vague complaint about Harmon's conduct at a manager's meeting. *Id.* at 5, 14. These instances are not sufficient as a matter of law to rise to a level that is so severe and persuasive to constitute a hostile work environment.  When asked specifically, Hoosier could not identify any other specific examples of harassment.  Hoosier's allegations of "constant bullying, nasty criticisms, belittling opinions, public professional humiliation, intimidation, destructive accusations, insults, undue pressure, impossible deadlines and devaluing of her efforts" are vague and conclusory without any specific support in the record.  That is not enough to defeat a motion for summary judgment.[4]

The Court finds as a matter of law that a reasonable jury would not determine Harmon's treatment was so severe or pervasive as to alter the conditions of Hoosier's employment in a significant way.  Hoosier is the supervisor in the Front Office of the Hilton Oak Lawn and is the highest paid employee in her department.  Unfortunately, many employees have to put up with

---

[4]  Moreover, even if the Court were to consider the additional declarations submitted by Hoosier without complying with Local Rule 56.1, that would not change the Court's conclusion that Hoosier cannot establish that she was subjected to a hostile work environment because of her race or age.

some amount of rude, arrogant or even boorish behavior at work and endure criticism from their bosses. The Seventh Circuit has held that being addressed in a loud and unprofessional tone during one or two meetings does not satisfy the requirement that the offensive conduct be severe and pervasive. *See e.g.*, *Atanus v. Perry*, 520 F.3d 662, 676 (7th Cir. 2008) (citing *Moser v. Indian Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533, 537 (7th Cir. 1993) (noting that "relatively isolated instances of non-severe misconduct will not support a hostile work environment claims" and holding that a supervisor's conduct, though "inappropriate and unprofessional," was not "so serious or pervasive that it created a hostile work environment within the meaning of Title VII"); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)(remarking that Title VII is not a code of "general civility"). Harmon's alleged conduct and the two or three specific instances identified fall far short of creating an actionable hostile work environment.

In addition, there is no evidence in the record to support the inference that Harmon treated Hoosier the way he did because of her race or age. While Hoosier clearly was not happy with her work environment and Harmon may be a very demanding and even unfairly critical supervisor, Hoosier has not offered any evidence other than pure speculation that Harmon treated Hoosier the way he did because of her protected status. Hoosier offers no concrete evidence to support her speculation that Harmon's conduct was motivated by a discriminatory animus, and there is no admissible evidence in the record that links Harmon's behavior toward Hoosier to her race or age. The mere fact that Hoosier is a member of a protected class does not suffice to bridge the gap between Harmon's conduct and a violation of Hoosier's civil rights.

Hoosier cites to and relies upon the United States Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), to argue that the cumulative effect of individual acts overtime constitutes an adverse employment action. The factual underpinning of that case is drastically different than this case. The plaintiff in *Nat'l R.R. Passenger Corp. v. Morgan* alleged that: (1) the discrimination began at the start of his employment when he was hired as an electrician helper even though is was qualified as an electrician; (2) Amtrak refused to allow him to participate in an apprentice program; (3) he received numerous written warnings or counseling for absenteeism; (4) he was subjected to racial jokes, racially derogatory acts, negative comments about the capacity of African Americans to be supervisors and the use of racial epithets against him by his managers; and (5) he ultimately was terminated for refusing to follow orders. 536 U.S. at 106, 120. Nothing that Hoosier alleges in this case comes even close to the discrimination and harassment that the plaintiff alleged he endured in *Nat'l R.R. Passenger Corp. v. Morgan*.

Because Hoosier has failed to submit sufficient evidence to create a material issue of disputed fact that Harmon harassed her because of her protected status, Greenwood is entitled to judgment as a matter of law with respect to Hoosier's harassment claims.

### C.  Hoosier's Retaliation Claims Fail As A Matter of Law

Hoosier also alleges claims of retaliation under Title VII, Section 1981, the IHRA and the ADEA. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably that similarly situated employees

who did not engage in statutorily protected activity. *See Tomanovich v. Cit of Indianapolis*, 457

F.3d 656, 663 (7th Cor. 2006); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (applying

the burden shifting standard to Title VII and Section 1981 retaliation claims); *Kodl v. Bd. of*

*Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007) (applying the burden shifting

standard to an ADEA claim).

"Under the indirect method of proof, failure to satisfy any one element of the *prima facie*

case is fatal to an employee's retaliation claim." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552,

560 (7th Cir. 2004). If, however, the plaintiff established each of these elements, the burden

shifts to the defendant to come forward with a legitimate, non-retaliatory reasons for the alleged

adverse action taken against the plaintiff. *Tomanovich*, 457 F.3d at 663. Once a defendant

presents a legitimate, non-discriminatory reasons for the adverse action, the burden shifts back to

the plaintiff to show that the defendant's reason is pretextual. *Id.*

Hoosier's claims for retaliation fail for a number of reasons. To begin with, Hoosier has

failed to present any evidence that she engaged in statutorily protected activity. While Hoosier

reported that she believed that Harmon singled her out by asking her harsh and difficult questions

regarding her job duties, at no time did she report to anyone at Greenwood that she believed she

was being singled out because of her race or her age. Hoosier admitted that no one at

Greenwood, including Harmon, ever made any reference to her race or her age. It is well-settled

law that general complaints do not constitute protected activity. *See Sitar v. Ind. Dep't of*

*Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (a complaint must indicate impermissible

discrimination because general complaint about coworkers or a work environment do not

qualify). "Merely complaining in general terms of discrimination or harassment, without

indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient" to state a claim for retaliation. *Tomanovich*, 457 F.3d at 663. Because Hoosier failed to complain specifically about race or age discrimination, she cannot establish the first element of her *prima facie* case of retaliation.

Hoosier's claims of retaliation also fail because she cannot establish that she suffered an adverse employment action as discussed above. Adverse employment action "has been defined quite broadly in this circuit." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996); *Oest v. Illinois Dep't. of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001). The Seventh Circuit has recognized that "creating a precise list of activities that constitute adverse employment actions would be impossible because of the unique circumstances of individual cases," but it has noted some examples of adverse employment actions: "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities.'" *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002) (quoting *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir.1999)). Given this flexible and, practical approach, the Seventh Circuit has "emphasized that an adverse employment action need not be quantifiable in terms of pay or benefits." *Id.* at 466. An adverse employment action, nevertheless, "is one that is materially adverse, 'meaning more than a mere inconvenience or an alteration of job responsibilities.'" *Id.* at 465 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). Accordingly, "not everything that makes an employee unhappy is an actionable adverse action." *Smart*, 89 F.3d at 441.

It is unclear to the Court what facts Hoosier relies upon to support her claim that she suffered an adverse employment action because Greenwood and/or Harmon retaliated against her. Hoosier has failed to show how her job was altered, that the work that she was performing was changed, or that her opportunities to advance within at Greenwood were affected. The facts instead reveal that Hoosier still is employed by Greenwood as the supervisor of the Front Office at the Hilton Oak Lawn and is the highest ranking employee in her department. She never has been written-up or suspended from her job nor has she experienced any reduction in pay or benefits since Greenwood started managing the hotel in 2009. Hoosier, however, is aware that other employees have been disciplined and discharged by Harmon. Other than the two or three specific instances discussed above, Hoosier has not identified any other instances of misconduct that form the basis for her retaliation claims.[5]

Finally, Hoosier also has failed to show that she was treated less favorably than similarly situated employees. To demonstrate that another employee is similarly situated, a plaintiff "must show that he [or she] is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Hoosier claims that her alleged comparator is Deanna Hayes, who is the Revenue Manager at the hotel. Hoosier and Hayes, however, do not have the same position, and Harmon has disciplined Hayes for attendance violations and forecasting errors whereas Hoosier never has been disciplined by Harmon. It is unclear on this record how Hoosier and Hayes are similarly situated. Hoosier

---

[5] Although these facts are not properly before the Court, in her memorandum of law in opposition to the motion for summary judgment, Hoosier alleges that she was forced to take a leave of absence to seek medical attention to address her emotional well being. However, Hoosier acknowledges that Greenwood granted her request for a medical leave and that she subsequently returned to work and remains employed at the Hilton Oak Lawn.

claims that Hayes was treated differently than Hoosier because Hayes is paid three to four thousand dollars more per year than Hoosier and because Harmon generally treated Hayes differently than her. Hoosier, however, presents no evidence that Hayes complained about the way she was treated by Harmon or that Hayes was treated differently than Hoosier when she complained.

Although Hoosier generally alleges that she was retaliated against, she has presented no evidence to establish that any actions were taken because she opposed some discrimination that she reasonably believed occurred. There is no evidence that she engaged in any protected activity. In fact, Hoosier admits she did not complain to anyone about discrimination. Without more, Hoosier's claims that she engaged in protected activity and suffered an adverse employment action is deficient, and there are no disputed issues of material fact sufficient to defeat Greenwood's motion for summary judgment.

Accordingly, Greenwood is entitled to judgment as a matter of law with respect to Hoosier's retaliation claims.[6]

## IV.  CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, the Court grants defendant Greenwood Hospitality Management LLC's Motion for Summary Judgment [55] as to all claims and its Motion to Strike Each of Plaintiff's Declarations in Opposition to Defendant's Motion for Summary Judgment [76].  The Clerk is directed to enter judgment in

---

[6] Because the Court finds that Hoosier has failed to establish her *prima facie* case for retaliation, the Court declines to address her argument that Greenwood is vicariously liable for Harmon's actions.

favor of defendant Greenwood Hospitality Management LLC and against plaintiff Karen

Hoosier.  This is a final and appealable order.

    It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 26, 2014